IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC, § § § § *Petitioner,* § v. § § JOHNSON BROTHERS LIQUOR § COMPANY, § § *Respondent.* § | MISC. ACTION NO. 24-mc-8_____ |

## REPUBLIC NATIONAL DISTRIBUTING COMPANY, LLC'S BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY FROM NON-PARTY JOHNSON BROTHERS LIQUOR COMPANY

Pursuant to Federal Rule of Civil Procedure 45, Republic National Distributing Company, LLC ("RNDC") submits this Motion to Compel concerning Johnson Brothers Liquor Company ("Johnson Brothers") failure to comply with RNDC's non-party Rule 45 subpoena for documents. *See* Ex. A (RNDC Subpoena). RNDC respectfully asks the Court to enter an order compelling Johnson Brothers to fully comply with its discovery obligations within fourteen calendar days of such order.

## INTRODUCTION

The underlying action arises from Sazerac's unexpected termination of its longtime alcohol supplier-distributor relationship with RNDC.[1] For years, RNDC served as Sazerac's exclusive alcohol distributor throughout the United States until Sazerac abruptly terminated that relationship in 30+ states and replaced RNDC with a patchwork of other

---

[1] The lawsuit is currently pending in the United States District Court for the Western District of Kentucky. It is styled and numbered *Sazerac Company, Inc. v. Republic National Distributing Company, LLC*, No. 3:23-CV-25-GNS.

1

distributors, including Johnson Brothers. Ex. E, at 5; Ex. F, at 2–3. While Sazerac and RNDC certainly had a right to terminate the relationship, under well-settled principles governed by the Uniform Commercial Code, Sazerac was required to provide reasonable notice, follow industry norms, and use good faith in doing so. Ex. F, at 32–35. Sazerac wholly failed to satisfy any of these minimum standards when it abruptly sent its notice of termination on the eve of New Years Day weekend and only provided RNDC 30 days to unwind the relationship, sell its inventory at its bargained for profit (or transfer it to successor distributors), and position itself for a post-Sazerac world. Ex. F, at 29–31; Ex. J (Sazerac's Dec. 30, 2022 termination communication).

In fact, through discovery, we now know that Sazerac planned this termination for over six months, and despite the breadth and complexity of the parties' relationship, saddled RNDC with inventory it could not timely sell for the profits it bargained for, much less its costs of goods, allowed distributors like Johnson Brothers to sell into RNDC's markets during the notice period, and loaded its successor distributors, including third-party Johnson Brothers, with so much inventory that the market was flooded with product. *See* Ex. F, at 29–32; Ex. K (RNDC's email communications with Johnson Brothers most recently dated Feb. 22, 2023).

Through discovery, RNDC has uncovered evidence of Sazerac's extensive communications and negotiations with replacement distributors, like Johnson Brothers, in every state served by RNDC prior to RNDC's termination. Sazerac orchestrated meetings with these new distributors throughout the Summer and Fall of 2022 to replace RNDC, all

2

the while misleading RNDC into believing that RNDC would continue to be Sazerac's exclusive distributor in those same markets.

Based on this information, on June 13, 2023, RNDC subpoenaed Johnson Brothers as part of its lawsuit against Sazerac, requesting documents related to Sazerac's termination of RNDC's distributor relationship and decision to replace RNDC with Johnson Brothers in the Indiana, North Dakota, South Dakota, and Nebraska markets. Ex. A. Instead of complying with its discovery obligations, Johnson Brothers has spent months stonewalling RNDC, ultimately failing to produce any documents in response to RNDC's subpoena while continuously representing to RNDC that documents would be forthcoming. *See* Exs. B–D, I (email communications between RNDC's and Johnson Brothers' counsel).

In the underlying action, document discovery between Sazerac and RNDC is substantially complete, and deposition discovery is currently underway, with at least ten fact witness depositions scheduled to take place through the end of March. Despite months of waiting for Johnson Brothers to comply with RNDC's subpoena, Johnson Brothers has produced no documents and has refused to provide a date certain by which it will do so. RNDC is, therefore, forced to seek court intervention by way of this Motion.

## CASE BACKGROUND

Between at least 2011 and September 2021, RNDC served as Sazerac's alcohol distributor of choice across the country through a series of email agreements with additional terms supplemented and implied by the Uniform Commercial Code and the parties' course of dealing. Ex. E, at 2; Ex. F, at 3; *see* KRS § 355.2-207(3). In 2021, Sazerac's leadership desired to reap more profit by implementing a new business model

where Sazerac, as a supplier, would perform RNDC's duties as a distributor. Ex. F, at 25–28. Instead of RNDC being free to purchase inventory from Sazerac and then sell it to retail customers for profit, Sazerac demanded a "cap" on RNDC's gross profits, with any excess paid to Sazerac. Ex. F, at 25–26. In sum, Sazerac believed it could reap millions if it performed distributor functions in-house.[2]

Sazerac's plan for a new arrangement with RNDC diminished the role of the wholesaler in the three-tier system, and RNDC was concerned that his new model would be violative of the three-tier system laws which generally prohibit suppliers from selling product to retailers. Sazerac's new terms included RNDC's acceptance of Sazerac's vendor-managed inventory ("VMI") system, through which Sazerac ordered Sazerac products for distributors on the distributor's behalf, with the distributor retaining minimal ability to adjust what Sazerac purchased and charged the distributor. Ex. F, at 26–27. Sazerac additionally required RNDC to participate in what is called Sazerac's MDR/MDM program, whereby Sazerac hired its own representatives to shift traditional distributor tasks (like marketing, sales, product placement, promotional, and merchandising activities) in-house. Ex. F, at 26–27.

---

[2] RNDC grew increasingly concerned that Sazerac's new business model violated multiple regulations within the "three-tier system" in the wine and spirits industry. The tiers consist of suppliers (like Sazerac), which sell alcohol products to distributors (like RNDC), which in turn market and sell product to retailers (like restaurants and liquor stores). This system involves state-mandated regulatory restrictions defining the services that the supplier, distributor, and retailer may provide. To boost its profits, Sazerac conspicuously "blurred the line" between Supplier and Distributor by performing many of RNDC's responsibilities as a distributor.

Despite voicing concerns, RNDC accepted Sazerac's new terms in September 2021 to determine if Sazerac's plan was workable. Ex. F, at 26. Unfortunately, Sazerac's aggressive terms, failure to comply with applicable three-tier alcohol beverage laws, and failure to follow through on its commitments under the September 2021 agreement, together with a shifting business environment, forced RNDC to send a June 2022 notice of termination of the terms of the September 2021 agreement. Ex. F, at 28–29.

After RNDC's termination of that September 2021 agreement, the parties operated under the terms of their pre-September 2021 agreement and engaged in negotiations for a new agreement. From June (when RNDC sent its termination notice) to December 2022, Sazerac led RNDC to believe it was engaging in good-faith negotiations. Ex. F, at 29–32. Behind the scenes, however, Sazerac retained Deloitte to assist it in orchestrating a mass termination of RNDC, spending those months planning for a patchwork of 24 distributors—like Johnson Brothers—to replace RNDC across the country. On December 30, 2022, without any notice or communication to RNDC, Sazerac broadcast through a press announcement its intent to terminate RNDC in every market, effective February 1, 2023—providing a mere thirty days for RNDC to sell to customers or transition to the replacement distributors its current Sazerac inventory. Ex. J. At this time, Johnson Brothers was announced as, and became, the exclusive distributor for Sazerac in certain counties in Indiana, North Dakota, South Dakota, and Nebraska. Ex. J.

When suppliers terminate distributors in the alcohol industry, it is industry custom for the impacted parties to work together to ensure a smooth transition of the business, including the sale of inventory to retailers and the transfer and sale of inventory from the

5

terminated distributor to the successor distributor(s). Throughout most of 2023, RNDC attempted to transition its inventory to successor distributors but was met several challenges due to Sazerac's actions with the successor distributors. Successor distributors, including Johnson Brothers, were already sufficiently stocked with Sazerac products (thus they declined to purchase any inventory from RNDC), failed to respond to RNDC's outreach, and/or refused to pay industry-standard fees associated with transitioning inventory. Ex. K. In short, RNDC was left with millions of dollars of unsellable inventory.

Remarkably, Sazerac filed suit against RNDC in the United States District Court for the Western District of Kentucky, alleging that RNDC breached the parties' distribution agreement, and that Sazerac should be paid twice for its inventory—once for its regular sales to RNDC, and then again for inventory sold to successor distributors. Ex. E. RNDC countersued, asserting that, among other things, Sazerac breached the parties' distribution agreement, misrepresented its position to RNDC in the months leading up to Sazerac's termination to induce RNDC to take on additional Sazerac inventory it would not be able to sell, and violated state three-tier distribution laws.[3] Ex. F.

---

[3] Sazerac sued RNDC for breach of contract, unjust enrichment, and account stated. Ex. E, Compl., Dkt. 1, at 10-13. RNDC counterclaimed for: (1) breach of contract and warranty, (2) unjust enrichment, (3) promissory estoppel, (4) equitable estoppel, (5) fraudulent inducement, (6) fraudulent concealment or nondisclosure, (7) negligent misrepresentation, (8) tortious interference with business expectancy and/or business relationships, and (9) negligence *per se*. Ex. F, Countercls., Dkt. 24, at 37-49.

## DISCOVERY SOUGHT

RNDC seeks the following categories of documents from Johnson Brothers, as more specifically set forth in RNDC's subpoena:

- Documents relating to Sazerac's establishment with Johnson Brothers of a distributor-supplier relationship in a former RNDC state, including draft agreements, and negotiations, or other electronic correspondence relating to terms or potential terms of a relationship between Sazerac and Johnson Brothers between January 1, 2022 through February 1, 2023. (Request Nos. 1, 2, and 3).

- Documents related to Sazerac product ordered by Johnson Brothers from January 1, 2022 through the present, including information by product; volume; state delivered to; order date; and delivery date; and the processes by which Sazerac products were ordered for, delivered to, and/or received by Johnson Brothers. (Request Nos. 4 and 5).

- Documents related to Sazerac's and Johnson Brothers' communications regarding RNDC's relationship with Sazerac, RNDC's distribution of Sazerac products, and/or this Lawsuit from January 1, 2022 through the present. (Request Nos. 6 and 9).

- Documents related to the potential or actual purchase or transition of Sazerac products from Johnson Brothers since June 1, 2022 through the present. (Request No. 7),

- Documents and communications addressing Sazerac's termination of RNDC in any state or territory since June 1, 2022. (Request No. 8).

- Documents regarding Sazerac's MDM/MDR Program. (Request No. 10).

- Documents identifying costs or handling fees paid by Johnson Brothers in connection with transition of inventory for the last five years. (Request No. 11).

*See* Ex. A (RNDC subpoena); Ex. D (RNDC Jan. 21, 2023 email limiting subpoenas). RNDC has since narrowed many of its requests to only those documents and communications relating to Sazerac's relationship with RNDC, any supplier-distributor relationship with Sazerac, and/or this lawsuit to further lessen the burden on Johnson Brothers. *See* Ex. B (limiting Request Nos. 1-5, 7 to documents and communications

7

"relating to a distributor-supplier relationship in any state(s) served by RNDC at any time between January 1, 2022 through February 1, 2023," and limiting Request No. 6 to "[a]ll Documents and Communications concerning or relating to RNDC's relationship with Sazerac, RNDC's distribution of Sazerac products, and/or this lawsuit from January 1, 2022 through the present"); Ex. D (further limiting requests).

Johnson Brothers has not produced documents in response to RNDC's subpoena, citing primarily burden and scope. Ex. B–D, I (Johnson Brothers response emails); Ex. H (Johnson Brothers' June 28, 2023 letter). Counsel for RNDC has followed up repeatedly on the status of production, and in response, Johnson Brothers continued to state that production is forthcoming with no date certain despite the multiple requests of RNDC's counsel for such a date. No production from Johnson Brothers has occurred. Further, when RNDC's counsel warned that RNDC could wait no longer and a motion to compel would be necessary, Johnson Brothers' counsel responded that any motion practice would require Johnson Brothers to fall back on its initial objections that RNDC's requests are (1) beyond the scope of the claims in the underlying claims or irrelevant and (2) available from other sources. Ex. C (Johnson Brothers' Dec. 1, 2023 email).[4] In failing to produce any materials now over six months after RNDC served its subpoena, Johnson Brothers has deprived RNDC of relevant information for which it has a substantial need.

---

[4] Johnson Brothers previously raised confidentiality concerns as well, but counsel for Sazerac, RNDC, and Johnson Brothers have agreed to a confidentiality agreement that Johnson Brothers' counsel has represented he will sign when Johnson Brothers makes its production.

## ARGUMENTS AND AUTHORITIES

I. **Legal Standard**

Federal Rule of Civil Procedure 45 allows a party to serve a subpoena commanding a non-party to produce and/or permit inspection and copying of documents and tangible things in its possession, custody, or control. *See* Fed. R. Civ. P. 45. A non-party may be compelled to produce documents in accordance with this Rule. *See* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection.").

The relevancy analysis for Rule 45 subpoenas on non-parties is the same as that under Rule 26(b)(1). *In re Pork Antitrust Litig.*, 2022 WL 972401, at *7 (D. Minn. Mar. 31, 2022). Federal Rule of Civil Procedure 26(b)(1) authorizes discovery regarding any matter, not privileged, that is relevant to the claim or defense of a party. Fed. R. Civ. P. 26(a)(1). The Eighth Circuit "construe[s] Rule 26(b)(1) broadly" and "a non-party can be compelled to produce evidence regarding any matter relevant to the claim or defense of any party, unless a privilege applies." *Mille Lacs Band of Ojibwe v. Cnty. of Mille Lacs*, 2020 WL 1847574, at *5 (D. Minn. Apr. 13, 2020) (quotations omitted). Once a party shows that discovery is relevant, courts may only modify a non-party subpoena if it "subjects a person to an undue burden," but "not every burden or expense will prompt a court to quash or modify a subpoena; some inconveniences sustained by a nonparty to comply with a subpoena will not amount to disproportionate burdens or expenses." *See Beyond Blond Prods., LLC v. Hall*, 2022 WL 3444039, at *3 (D. Minn. Aug. 17, 2022).

As explained herein, the materials requested in RNDC's subpoena are relevant to several of RNDC's claims, including demonstrating that Sazerac breached its contract with RNDC and fraudulently misrepresented its position by coaxing RNDC into taking on excessive inventory while at the same time loading up successors with the same products. Johnson Brothers fails to establish any basis that the Requests are irrelevant or unduly burdensome. Thus, the Court should grant RNDC's Motion in full.

### II. **Johnson Brothers' Objections Based on Relevancy Are Unfounded.**

Johnson Brothers has objected to RNDC's subpoena requests primarily on relevancy grounds. Despite these objections—and as explained further below—all of RNDC's requests seek relevant material. Request Nos. 1-10 seek materials related to RNDC and Sazerac's relationship, the breakdown of that relationship leading to termination, and Johnson Brothers' involvement in that termination as a successor distributor for Sazerac. In addition, Request No. 11 seeks information relevant to establishing industry customs and practices regarding costs and handling fees customarily paid in the industry when transitioning inventory between suppliers. These are the precise issues in dispute in the underlying action.

#### A. **Request Nos. 1, 2, and 3 Seek Relevant Information Related to Sazerac's Negotiations and Contractual Relationship with Johnson Brothers.**

RNDC's Request Nos. 1, 2, and 3 seek documents and communications from January 1, 2022, through the present relating to Sazerac's establishment with Johnson Brothers of a distributor-supplier relationship in a former RNDC state, including draft

10

agreements, negotiations, or other electronic correspondence relating to terms or potential terms of a relationship between Sazerac and Johnson Brothers. *See* Exs. A, D.

Communications between Sazerac and its successor distributors like Johnson Brothers from the months leading up to Sazerac's termination of RNDC are vital to supporting RNDC's claims that Sazerac plotted and executed the abrupt termination of RNDC in violation of Sazerac's duties of good faith and fair dealing owed to RNDC. Specifically, the development and timing of the conversations with distributors to replace RNDC surrounding Sazerac's termination are key to showing the extent of Sazerac's wrongdoings and when they were occurring in relation to its discussions with RNDC to continue their relationship. Any negotiated terms or finalized, subsequent agreement bear on the reasonableness of Sazerac's action of terminating RNDC in Sazerac's chosen manner.

**B.     Request Nos. 4, 5, and 7 Seek Relevant Information Related to Sazerac's Inventory Transition to Johnson Brothers.**

RNDC's Request No. 4 seeks a report detailing the Sazerac products ordered by Johnson Brothers from January 1, 2022 through the present. Request No. 5 seeks documents and communications addressing or explaining the process by which Sazerac products are ordered for, delivered to, and/or received by Johnson Brothers. Request No. 7 seeks documents and communications addressing the potential or actual purchase or transition of Sazerac products from RNDC to Johnson Brothers since June 1, 2022 through the present. Exs. A, D.

These Requests are relevant to RNDC's claims for breach of contract, fraudulent inducement and concealment, negligent misrepresentation, and tortious interference. Due to Sazerac's clandestine efforts to line up replacement distributors and sell them all of the inventory they would need to serve their customers before Sazerac terminated RNDC, RNDC was unable to transition its Sazerac products to successor distributors, as is customary in the industry when a supplier replaces a distributor. Invoices, purchase orders, and shipping confirmations to/from Johnson Brothers would confirm inventory levels of Sazerac products at several of Johnson Brothers' facilities during critical points in time while RNDC's relationship with Sazerac was ongoing and winding up. Further, the timing of when Sazerac was supplying Johnson Brothers with inventory and the volumes is probative as to RNDC's claims for breach of contract and negligent or fraudulent misrepresentation, as it underscores Sazerac's scheme to fully stock all its successor distributors prior to the announcement of its termination of RNDC. These documents would also evidence Sazerac's fraudulent conduct in interfering with RNDC's ability to transition and sell a substantial amount of Sazerac inventory after RNDC received notice of termination from Sazerac.

### C. Request Nos. 6, 8, and 9 Seek Relevant Information Concerning Sazerac's Communications with Johnson Brothers regarding RNDC and this Lawsuit.

Request Nos. 6 and 9 seek communications and documents in Johnson Brothers' possession addressing RNDC's relationship with Sazerac, RNDC's distribution of Sazerac products, and/or this Lawsuit from January 1, 2022 through the present. Request No. 8

seeks all documents addressing Sazerac's termination of RNDC in any state or territory since June 1, 2022 through the present. Exs. A, D.

Communications and documents that pertain to any of Johnson Brothers' communications with Sazerac regarding RNDC's relationship with Sazerac or this Lawsuit[5] are pertinent to any of RNDC's claims for fraudulent or negligent misrepresentation, breach of contract (including Sazerac's failure to adhere to its obligations of good faith and fair dealing), and tortious interference of business relationships. RNDC asserts, and existing discovery shows, that Sazerac contacted several successor distributors in the six months leading up to Sazerac noticing its termination of RNDC to concoct Sazerac's ploy to cheat RNDC out of millions. Sazerac shared several of RNDC's distribution product lineups, pricing, and processes with Johnson Brothers, and internal Johnson Brothers conversations of these processes will corroborate and verify testimony about the extent of the relationship between Sazerac and Johnson Brothers. Discussions regarding any planning of the transition or RNDC's termination, process or product mix of RNDC's sales of Sazerac products, or comment about the Lawsuit would bear on RNDC's allegations of Sazerac's breach of Sazerac's and RNDC's distribution agreement.

---

[5] Even if any communications about the Lawsuit took place after the Lawsuit was filed, Johnson Brothers' commentary on Sazerac's termination of RNDC in Indiana / North Dakota / South Dakota / Nebraska or other communications Johnson Brothers and Sazerac have had about the Lawsuit would be relevant and informative of Sazerac's positions regarding the claims and the parties' prior relationship.

**D.      Request No. 10 Seeks Relevant Information Regarding Sazerac's MDM/MDR Program.**

RNDC's Request No. 10 seeks all documents and communications regarding Sazerac's MDM/MDR Program. Exs. A, D.

Sazerac's implementation of the MDM/MDR Program across its successor distributors is relevant to RNDC's negligence *per se* claim as well as RNDC's assertion that Sazerac sought distributors involved in potential violations of three-tier system laws in many of the terminated states, leading RNDC to terminate the agreement as it existed in June 2022. Sazerac implemented a nationwide program with nationwide training which affected its relationship with distributors across the country. Johnson Brothers' documentation of these efforts, and particularly its concerns about or applications of the Program, is relevant to RNDC's claims that these trainings and programs were both inadequate and illegal. Further, this Request is relevant to RNDC's defenses against Sazerac's claims that RNDC's underperformance were self-inflicted and not caused by any the problems with the MDM/MDR Program. *See* Ex. H (Johnson Brothers' June 28, 2023 letter). Courts have found it relevant to disclose "similar claims or incidents across a national geographic scope where the discovery was relevant to matters such as . . . the implementation of a company-wide policy related to the relevant claim or incident." *Lyman v. Greyhound Lines, Inc.*, 2021 WL 719904, at *3 (D. S.C. Feb. 24, 2021) (citations omitted). Johnson Brothers' discussions and communications about Sazerac's company-wide policy of instituting its full-fledged marketing force and other nationwide policies are relevant and should be disclosed.

> **E.   Request No. 11 Seeks Relevant Information Concerning Johnson Brothers' Practice of Transitioning Inventory from Terminated Distributors.**

Request No. 11 asks for documents identifying costs or handling fees paid by Johnson Brothers in connection with transition of inventory for the last five years.

This Request goes to the industry customs in the alcoholic beverage sector, as RNDC's position is that successor distributors like Johnson Brothers owe RNDC a transfer fee for delivering any Sazerac inventory consistent with industry custom, and Sazerac argues that RNDC's claimed "industry custom is fabricated." *See* Ex. G, (Sazerac's Reply to RNDC's Counterclaims). Of pertinence here to establishing industry custom is Johnson Brothers' practice of charging or paying inventory transfer fees, as Johnson Brothers is a significant participant in the alcohol-distribution industry with RNDC, and their inventory handling practices are relevant to whether Sazerac acted appropriately.

**III.   Johnson Brothers is in the Best Position to Provide These Documents.**

Johnson Brothers objects to each Request by arguing that the materials RNDC seeks "could be obtained from some other source[s]" like Sazerac in a more practical manner. Ex. H.

The availability of certain materials from Sazerac does not absolve Johnson Brothers from complying with RNDC's subpoena. Rather, "the fact that the same information may be available from two different sources does not excuse one of those sources from producing the information." *Brake Parts, Inc. v. Lewis*, 2009 WL 1939039, at *4 (E.D. Ky. July 6, 2009) (rejecting non-party's argument that plaintiff "should first make efforts to obtain this discovery from [party] before it would be entitled to request

15

discovery from [the non-party]."). Johnson Brothers' negotiations, inventory documentation, and discussions about termination of RNDC may differ from Sazerac's version of events, and "[i]n many cases, it is important to obtain what should be the same documents from two different sources because tell-tale differences may appear between them; and . . . in many cases . . . a critical fact in the litigation turns out to be that one set omitted a document that was in the other set." *Coffeyville Res. Refin. & Mktg., LLC v. Liberty Surplus Ins. Corp.*, 2008 WL 4853620, at *2 (E.D. Ark. Nov. 6, 2008). RNDC may discover materials from Johnson Brothers, and Johnson Brothers is obligated to produce these materials, even if there are some documents that overlap with materials requested from or obtained by Sazerac.

In addition, Johnson Brothers' documents, communications, and internal discussions regarding Sazerac and RNDC are necessary to corroborate evidence from Sazerac and fill gaps where Sazerac's production has been observed to be incomplete. *See Jordan v. Dillards, Inc.*, 2006 WL 2873472, at *2 (D. Kan. Oct. 5, 2006) ("Plaintiff has failed to meet her burden to identify any other sources from which Defendant could corroborate [other evidence]."). With the intricate web of Sazerac's successor distributors nationwide, communications and documents in successor distributors' possession are the only means to ensure the integrity of the information that Sazerac has provided about themselves, the extent of Sazerac's conversations with successor distributors, and the nature of the negotiations between Johnson Brothers and Sazerac. Further, only Johnson Brothers has authentic compilations of their own inventory levels, transition fees paid, and actual inventory shipments to their own warehouses. The Requests have been sufficiently

16

limited to those documents relating to Sazerac's relationship with RNDC or those pertaining to this Lawsuit.

## **CONCLUSION**

For the reasons addressed herein, RNDC respectfully requests that this Court order Johnson Brothers to complete the following within fourteen days of the Court's order:

1. Produce all documents and communications between Johnson Brothers and Sazerac relating to a distributor-supplier relationship in any state(s) served by RNDC at any time between January 1, 2022 through February 1, 2023, including documents concerning, relating to, or reflecting negotiations between Johnson Brothers and Sazerac and the terms of any agreements between Johnson Brothers and Sazerac along with any draft agreements and or electronic correspondence relating to terms or potential terms of a relationship between Johnson Brothers and Sazerac. (Request Nos. 1, 2, and 3).

2. Produce a report detailing the Sazerac products ordered by Johnson Brothers from January 1, 2022 to the present, including the following information: product, volume, state ordered to, order date, and delivery date. (Request No. 4).

3. Produce all documents and communications addressing or explaining the process by which Sazerac products are ordered for, delivered to, and/or received by Johnson Brothers. (Request No. 5).

4. Produce all documents and communications addressing RNDC's relationship with Sazerac, RNDC's distribution of Sazerac products, and/or this Lawsuit from January 1, 2022 through the present. (Request Nos. 6 and 9).

5. Produce all documents and communications addressing the potential or actual purchase or transition of Sazerac products from RNDC to Johnson Brothers since June 1, 2022 through the present. (Request No. 7).

6. Produce all documents and communications addressing Sazerac's termination of RNDC in any state or territory since June 1, 2022 through the present. (Request No. 8).

7. Produce all documents and communications concerning or relating to Sazerac's MDM/MDR Program. (Request No. 10).

8. Produce all documents sufficient to identify any costs or handling fees paid by or to Johnson Brothers in connection with the transition of inventory to or from Johnson Brothers by another distributor in connection with the transition of a supplier's alcohol beverage product line to or from Johnson Brothers in the last five (5) years.  (Request No. 11).

| | | |
|---|---|---|
| Dated: | January 29, 2024 | Respectfully submitted,<br>Gerardo Alcazar (MN #0386522)<br>Peter Estall (MN #0401256)<br>Gabriel Ramirez-Hernandez (MN #0402020)<br>Norton Rose Fulbright U.S. L.L.P.<br>60 South Sixth Street, Suite 3100<br>Minneapolis, MN  55402<br>Phone: (612) 321-2800<br>Email: gerardo.alcazar@nortonrosefulbright.com<br>peter.estall@nortonrosefulbright.com<br>gabriel.ramirezhernandez@nortonrosefulbright.com<br>*/s/ Richard S. Krumholz*<br>Richard S. Krumholz (*pro hac vice* forthcoming)<br>Patrick Doyle (*pro hac vice* forthcoming)<br>NORTON ROSE FULBRIGHT US LLP<br>2200 Ross Avenue, Suite 3600<br>Dallas, TX 75201<br>Tel.: (214) 855-8000<br>Fax: (214) 855-8200<br>richard.krumholz@nortonrosefulbright.com<br>patrick.doyle@nortonrosefulbright.com<br><br>***Counsel for Republic National Distributing Company, LLC*** |